IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RASSAN M. TARABEIN, | * | |
| # 16872-003, | * | |
| | * | |
| Petitioner, | * | |
| | * | CRIMINAL NO. 17-00090-KD-B |
| vs. | * | CIVIL ACTION NO. 21-00189-KD-B |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |

ORDER

Pending before the Court is Petitioner Rassan M. Tarabein's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 200), the United States' response (doc. 205), and Tarabein's reply (doc. 206). Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[1] Upon consideration, Tarabein's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 is **DENIED**, and this action is **DISMISSED with prejudice.**

I.    BACKGROUND

Petitioner Rassan M. Tarabein ("Tarabein") is a former neurologist who operated a neurology and pain management clinic in

---

[1] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record.  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

Daphne, Alabama.  (Doc. 200-1 at 2).  He was accused of orchestrating a thirteen-year scheme[2] to defraud health care benefit programs by performing and billing for medically unnecessary tests and procedures, fraudulently rendering services, fraudulently billing to maximize reimbursement, falsifying patient records, and prescribing controlled substances for no legitimate medical purpose.  (See Doc. 10).

In June 2017, Tarabein was charged by superseding indictment with two counts of health care fraud, in violation of 18 U.S.C. § 1347 (counts one and two); eleven counts of making false statements relating to health care matters, in violation of 18 U.S.C. § 1035 (counts three through thirteen); one count of making a false statement to a federal agent, in violation of 18 U.S.C. § 1001 (count fourteen); four counts of unlawfully distributing and dispensing a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (counts fifteen through eighteen); and four counts of engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. §§ 1957 and 2 (counts nineteen through twenty-two).  (Id. at 1-19).  The superseding indictment also contained a forfeiture notice.  (Id. at 19-22).

---

[2]  Tarabein was accused of orchestrating the scheme from approximately 2004 through May 2017.  (Doc. 10 at 6).

On August 7, 2017, Tarabein's retained trial counsel[3] gave notice of Tarabein's intent to plead guilty to counts one and eighteen of the superseding indictment pursuant to a written plea agreement.  (Doc. 73).  As part of his plea agreement, Tarabein waived his rights to challenge his guilty plea, conviction, or sentence in a direct appeal or collateral attack, except that Tarabein reserved his rights to file a direct appeal challenging any sentence imposed in excess of the statutory maximum or constituting an upward departure or variance from the advisory guidelines range, and to raise any claim of ineffective assistance of counsel in either a direct appeal or § 2255 motion.  (Doc. 80 at 17).  Tarabein also agreed to forfeit certain listed real and personal properties, and "to make full restitution in an amount to be determined by the Court at sentencing."  (Id. at 6-11).  In return, the Government agreed that it would not bring any additional charges related to the facts underlying the superseding indictment, move to dismiss the remaining counts after sentencing, and recommend that Tarabein be sentenced to no more than sixty months' imprisonment, to run concurrently with any state sentence. (Id. at 11-12).

---

[3] Attorneys John W. Beck and Thomas J. Spina represented Tarabein throughout the plea and sentencing proceedings in the district court.

At his change-of-plea hearing on August 31, 2017, Tarabein was placed under oath and questioned by the Court as to the voluntariness of his plea. (See Doc. 170). Tarabein acknowledged that no one had attempted to force him to plead guilty. (Id. at 7). He stated that he had experienced no problems communicating with his attorneys and confirmed that his attorneys had explained the charges against him and had discussed the facts of the case and possible defenses with him. (Id. at 2-4). He stated that he was satisfied with his attorneys' advice that he should enter a guilty plea, and with their general advice and representation of him throughout the case. (Id. at 4-5). Tarabein verified that he had read the plea agreement and discussed it with his attorneys before he signed it. (Id. at 5-6). He confirmed that he understood that the plea agreement required him to "admit certain property to forfeiture," and that he was subject to restitution. (Id. at 6, 9). He also confirmed that he understood the appeal and collateral attack waiver in his plea agreement, and the limited exceptions thereto. (Id. at 9-10). The Court informed Tarabein of the potential penalties for each offense, and Tarabein acknowledged that he understood those penalties. (Id. at 8). At the Court's request, counsel for the Government stated the elements of the offenses and summarized the relevant offense conduct. (Id. at 10-15). Tarabein agreed that the Government could prove the facts stated against him and entered a plea of guilty. (Id. at 16-17).

The Court accepted Tarabein's plea and adjudicated him guilty of counts one and eighteen.  (Id. at 17).

In January 2018, the United States Probation Office prepared a draft presentence investigation report ("PSR"), which calculated Tarabein's restitution amount at $12,231,301.00 and detailed the methodology used to arrive at that total.  (Doc. 92).  In February 2018, Tarabein, through counsel, filed his position with respect to sentencing factors and a supplement thereto.  (Docs. 93, 94). In those filings, Tarabein objected to the amounts of scheduled substances for which he was to be held accountable, the time periods during which he was alleged to have submitted fraudulent claims, the procedures that he was alleged to have most commonly fraudulently performed or billed, the illicit rates applied to those procedures, and the restitution amount, asserting that they were based on speculation and conjecture.  (See id.).  The Government also filed objections to the draft PSR, contending that it failed to account for more than $2 million in restitution for fraudulent prescriptions, and that the correct restitution amount was $14,526,122.63.[4]  (Doc. 100).  On May 24, 2018, Tarabein's counsel withdrew Tarabein's objections to the PSR.  (Doc. 102). On June 1, 2018, the Probation Office issued a revised final PSR,

---

[4] The Government also indicated that the draft PSR did not account for Tarabein's entitlement to credit for refunds totaling $229,973.00.  (See Doc. 100 at 1-2).

which listed a restitution amount of $15,010,682.00.[5]  (Doc. 107).

Thereafter, the Government filed a supplement to its sentencing

memorandum, which described the background and methodology of its

restitution calculations and detailed Tarabein's offense conduct.

(Doc. 114).

At Tarabein's sentencing hearing on June 8, 2018, the Court

noted that the Probation Office had determined Tarabein's total

offense level to be 33 with a criminal history category of I,

making his guideline imprisonment range 135 to 168 months.  (Doc.

171 at 2).  The Court stated that it had read character letters

submitted by both the Government and Tarabein's counsel.  (Id.).

The Government then presented five victim witnesses, who were

either former patients of Tarabein or their family members.  (Id.

at 2-17).  Another former patient testified as a character witness

on Tarabein's behalf.  (Id. at 22-27).  Tarabein also addressed

_____

[5] The revised final PSR stated:

> For restitution purposes, the defendant is being held
> accountable for the fraudulent procedures ($12,715,860)
> and the fraudulent schedule II prescriptions
> ($2,524,794).  The fraudulent non-schedule II
> prescriptions totaling $4,056,506 are provided for
> context.  By agreement of the parties, the defendant is
> not being held accountable for the non-schedule II
> prescriptions for restitution purposes.  Taking into
> account the credit for refunds ($229,973), the defendant
> is ultimately accountable for a total of $15,010,682 of
> illicit payments he received . . . .

(Doc. 107 at 10).

the Court briefly and stated that he "would take full responsibility for [his] actions and for everything that happened under [his] watch." (Id. at 27). The Court sentenced Tarabein to sixty months' imprisonment, followed by one year of supervised release,[6] and ordered him to make restitution in the amount of $15,010,682.00. (Id. at 37-38). After imposing the sentence, the Court asked for objections. (Id. at 38). Tarabein's attorney responded: "I don't have any objections, Your Honor." (Id.). Tarabein filed a notice of non-appeal in open court, stating that he had consulted with his attorney and did not wish to file an appeal. (Doc. 119).

On June 20, 2018, the Court entered a judgment consistent with the pronounced sentence and attached a signed preliminary order of forfeiture, which listed twenty-eight properties that Tarabein had agreed to forfeit as part of his plea agreement. (See Docs. 117, 121, 121-1). In conjunction with the judgment, the Court entered a statement of reasons indicating that it "adopt[ed] the presentence investigation report without change."[7] (Doc. 122).

---

[6] The Court advised that Tarabein could serve his supervised release term in his native Syria. (Doc. 121 at 3; see Doc. 171 at 37).
[7] This included the $15,010,682.00 total restitution amount listed in the final PSR. (See Doc. 107 at 10; Doc. 121 at 5; Doc. 171 at 38).

On August 29, 2018, Tarabein filed a *pro se* notice of appeal declaring his "intent to appeal [the] unfair sentence issued last June 8th, 2018, due to ineffective counsel, court sentence wiped out every penny I ever earned in my entire life, inflicted harsh & unfair harms to me personally, my business & my family." (Doc. 127).  Shortly thereafter, the Court permitted Tarabein's trial attorneys to withdraw from the case.  (See Docs. 134, 135, 136, 137).

In May 2019, the Eleventh Circuit appointed the Federal Defenders Office to represent Tarabein on direct appeal.[8]  (Doc. 166 at 2; Doc. 205 at 41).  In his counseled appellate brief, Tarabein raised two issues.  (See Doc. 205 at 33).  First, Tarabein argued that his appeal should not be dismissed based on his admittedly untimely *pro se* notice of appeal, because he had requested that his trial attorneys file a notice of appeal after sentencing, but they failed to comply with his request.  (Doc. 205 at 33, 44-51).  Second, Tarabein argued that the district court committed plain error by failing to make specific factual findings regarding the restitution calculations before imposing restitution.  (Id. at 33, 51-58).

---

[8]  Attorney Patricia Kemp of the Federal Defenders Office represented Tarabein on direct appeal.  (See Doc. 154; Doc. 205 at 24).

On January 13, 2020, the Eleventh Circuit affirmed the district court's judgment. (Doc. 176). Consistent with the Government's expressed preference, the appellate court declined to decide the issue of timeliness and instead proceeded to the merits of the appeal. (Id. at 8-9). The Eleventh Circuit found that the district court did not plainly err in relying on the restitution calculations in the PSR because Tarabein had provided no alternative method to calculate restitution, the district court had "ample reasons" to rely on the amount in the PSR,[9] and the

---

[9] The Eleventh Circuit explained its finding that the district court had "ample reasons" to rely on the restitution amount in the PSR, as follows:

> The supplemental memorandum filed by the government prior to sentencing contained numerous charts, calculations, and consultations with non-government experts who reviewed the procedures Tarabein conducted and the medical records to give estimates of what percentage of Tarabein's billing was fraudulent. Further, as the government points out, the figures put forward by the government appear to be a conservative estimate of Tarabein's fraud. The supplemental memorandum states that the figures were calculated using the "most common procedures fraudulently billed by Tarabein" even though "there are other procedures and tests Tarabein was performing fraudulently." And the figures only account for the years 2011 through 2016, even though Tarabein admitted to running this fraudulent scheme from 2004 to 2017. Finally, the total amount in the PSI did not include the roughly four million dollars of fraudulent non-schedule II prescriptions that Tarabein submitted, another category of funds which he could have been required to pay in restitution.

(Doc. 176 at 11-12).

appellate court had previously upheld restitution calculations based on methodology contained in the PSR in other cases. (Id. at 10-12). Because Tarabein's claim failed on plain error review, the Eleventh Circuit did not address the issue of whether it was barred by the appeal waiver in the plea agreement. (Id. at 10 n.4).

The Federal Bureau of Prisons transferred Tarabein to home confinement on November 6, 2020.[10] (Docs. 199, 210). On April 12, 2021, Tarabein, proceeding *pro se*,[11] filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.[12] (Doc. 200). The Government filed a response in opposition to Tarabein's motion, and Tarabein filed a timely reply. (Docs. 205,

---

[10] Despite being transferred to home confinement, Tarabein remains in the custody of the Bureau of Prisons. His anticipated release date is September 13, 2022. See BOP Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Nov. 3, 2021).

[11] Attorney Patricia Kemp filed a motion for compassionate release on Tarabein's behalf on October 6, 2020. (Doc. 197). Ms. Kemp has confirmed that she is not representing Tarabein in connection with the instant § 2255 proceedings. (See Doc. 202).

[12] Tarabein previously filed a § 2255 motion in May 2019, during the pendency of his direct appeal. (Doc. 157). However, Tarabein moved to dismiss that motion prior to the Government filing a response (Doc. 166), and the Court granted the motion and dismissed Tarabein's original § 2255 motion without prejudice. (Doc. 172). Because the Court dismissed Tarabein's original § 2255 motion without prejudice, the instant § 2255 motion is not an unauthorized "second or successive" motion for purposes of 28 U.S.C. § 2244(b). See Dunn v. Singletary, 168 F.3d 440, 441 (11th Cir. 1999) (per curiam).

206).  Thus, Tarabein's § 2255 motion has been fully briefed and is ripe for review.

## II.  **HABEAS STANDARD**

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.  The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

## III. **DISCUSSION**

In his § 2255 motion, Tarabein raises multiple claims of ineffective assistance on the part of his trial counsel, in an effort to obtain relief from the restitution and forfeiture portions of his sentence.  Tarabein claims that his attorneys rendered ineffective assistance by: (1) failing to challenge the

amount of restitution (ground one); (2) failing to challenge the forfeiture of his properties (ground two); (3) withdrawing his objections to the PSR before sentencing (ground three); and (4) failing to file a notice of appeal as instructed (ground four). (Doc. 200 at 4-8; Doc. 200-1 at 5-10).

Although Tarabein lists only four enumerated grounds for relief, he makes other assorted complaints about trial counsel's performance that the Court will liberally construe as independent claims. These include Tarabein's assertions that his attorneys performed deficiently by asking him not to bring any witnesses to sentencing; failing to prepare the sole witness who testified on his behalf at sentencing; failing to cross-examine the Government's witnesses at sentencing; failing to timely explain the meaning of certain terms; and making a request that could have caused him to serve his federal sentence at a state prison. (See Doc. 200-1 at 9-11).

### A. Failure to Challenge the Restitution Amount and Withdrawal of Objections to the PSR (Grounds One and Three).

In ground one of his motion, Tarabein claims that his trial counsel rendered ineffective assistance by failing to "argue the government's figures of restitution," which he contends "were merely speculated, irrational and have no merit or any material

evidence."   (Doc. 200 at 4; Doc. 200-1 at 1, 5).   Tarabein raises a related claim in ground three, asserting that his attorneys were ineffective when they "deceitfully" withdrew his objections to the PSR without his knowledge prior to sentencing.   (Doc. 200 at 6; Doc. 200-1 at 2).

The record reflects that Tarabein's counsel filed his position with respect to sentencing factors on February 9, 2018, which stated that Tarabein "objects to the amount of restitution as stated in paragraphs 26, 28, 31, 32, 33 and 104 of the [draft PSR]."   (Doc. 93).   In a supplement filed by counsel three days later, Tarabein also objected to paragraphs 25 and 29 of the draft PSR, asserting that "[b]oth paragraphs are based on speculation and conjecture similar to [paragraphs 26, 28, 31, 32, 33, and 104]."   (Doc. 94).   On May 24, 2018, Tarabein's counsel filed a notice of withdrawal of those objections, which stated:

> Comes now the Defendant and does hereby inform this Honorable Court that the Defendant wishes to withdraw his previous objections with respect to sentencing factors and the presentence investigation.   The Defendant has no objections to the presentence investigation filed herein and adopts the application and determination of sentencing factors and the guidelines calculations contained therein.

(Doc. 102).

The revised final PSR, issued on June 1, 2018, listed a restitution amount of $15,010,682.00, which included sums for both fraudulent procedures and fraudulent schedule II prescriptions and

13

provided a credit for refunds. (See Doc. 107 at 10). The final PSR noted that Tarabein was not being held accountable for fraudulent non-schedule II prescriptions totaling more than $4 million for restitution purposes, "[b]y agreement of the parties." (Id.). At Tarabein's sentencing hearing on June 8, 2018, neither Tarabein nor his attorneys raised any objections, including to the restitution calculations (see Doc. 171), and the Court adopted the final PSR without change. (See Docs. 121, 122, 171).

According to Tarabein, his attorneys were ineffective when they withdrew his objections to the PSR and failed to challenge the Government's restitution calculations, which the probation officer relied on and which Tarabein claims were merely speculation. (See Doc. 200-1 at 1-2, 5-6). The Government argues that Tarabein's challenge to the restitution portion of his sentence is not properly raised in a § 2255 motion, even when couched as a claim of ineffective assistance of counsel. (Doc. 205 at 12-13).[13]

Section 2255 states:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess

_____

[13] Because it is clear that Tarabein's challenge to his restitution sentence is not cognizable under § 2255, the Court need not address the Government's other arguments as to why Tarabein's claims in grounds one and three should be denied.

of the maximum authorized by law, or is otherwise subject
to collateral attack, may move the court which imposed
the sentence to vacate, set aside or correct the
sentence.

28 U.S.C. § 2255(a).  "The plain language of the statute indicates
§ 2255 applies to 'a prisoner in custody . . . *claiming the right
to be released*.'"  <u>Mamone v. United States</u>, 559 F.3d 1209, 1211
(11th Cir. 2009) (per curiam) (emphasis added) (quoting 28 U.S.C.
§ 2255(a)).

Focusing on this statutory language, the Eleventh Circuit has
held that granting a reduction in the amount of restitution would
be taking an action not authorized by § 2255, because a restitution
reduction is not a release from custody.  <u>See</u> <u>Blaik v. United
States</u>, 161 F.3d 1341, 1342-43 (11th Cir. 1998) ("[W]e hold that
§ 2255 cannot be utilized by a federal prisoner who challenges
only the restitution portion of his sentence because § 2255 affords
relief only to those prisoners who 'claim[ ] the right to be
released' from custody."); <u>cf.</u> <u>Arnaiz v. Warden, Fed. Satellite
Low</u>, 594 F.3d 1326, 1330 (11th Cir. 2010) (per curiam) (holding
that a prisoner cannot collaterally attack the restitution part of
a sentence using a § 2241 habeas petition).  A § 2255 motion may
not be used to challenge the restitution portion of a sentence
regardless of whether or not a petitioner raises an additional
claim seeking release from custody.  <u>See</u> <u>Mamone</u>, 559 F.3d at 1211
(holding that petitioners cannot utilize § 2255 to challenge their

restitution even "if cognizable claims seeking release from custody are also raised").

This principle applies even where, as here, the challenge to restitution is raised as an ineffective assistance of counsel claim. See Blaik, 161 F.3d at 1343 (noting that an ineffective assistance of counsel claim was the "constitutional vehicle Blaik used to challenge his restitution sentence"); Hill v. United States, 2007 U.S. Dist. LEXIS 114595, at *21, 2007 WL 9728453, at *8 (S.D. Fla. Dec. 10, 2007) ("[A] claim of ineffective assistance of counsel for failing to challenge the amount of restitution is beyond the scope of a § 2255 proceeding."), report and recommendation adopted, 2008 U.S. Dist. LEXIS 141520, 2008 WL 11450621 (S.D. Fla. Jan. 11, 2008), aff'd, 317 F. App'x 910 (11th Cir. 2009); Sajous v. United States, 2019 U.S. Dist. LEXIS 78681, at *34, 2019 WL 7944422, at *12 (S.D. Fla. May 8, 2019) ("Restitution claims, including ineffectiveness claims premised upon a failure to object to a restitution amount, are not cognizable in § 2255 proceedings since they do not challenge the movant's custody."), report and recommendation adopted as modified, 2019 U.S. Dist. LEXIS 115561, 2019 WL 7944412 (S.D. Fla. July 10, 2019); Nix v. United States, 2011 U.S. Dist. LEXIS 128883, at *23-24, 2011 WL 5404159, at *6 (S.D. Ga. Nov. 8, 2011) ("Restitution claims, including ineffectiveness claims premised upon a failure to object to a restitution amount, are not reachable

in § 2255 proceedings since they do not challenge the movant's custody."), report and recommendation adopted, 2012 U.S. Dist. LEXIS 54003, 2012 WL 1339601 (S.D. Ga. Apr. 17, 2012); see also United States v. Segler, 37 F.3d 1131, 1137 (5th Cir. 1994) ("[I]f counsel's constitutionally insufficient assistance affected the trial court's guilt determination or the sentencer's imposition of a prison term, a prisoner's ineffective assistance of counsel claim falls within the scope of § 2255; if, as here, it relates only to the imposition of a fine, his claim falls outside § 2255.").

Because relief from restitution is not a remedy authorized under § 2255, Tarabein's claim in ground one that his attorneys were ineffective in failing to argue the Government's restitution figures is not cognizable in a § 2255 motion.  Moreover, although raised as a separate ground for relief, it is clear that Tarabein's assertion in ground three that his attorneys were ineffective in withdrawing their objections to the PSR is simply a variation of his broader claim in ground one.  As Tarabein tacitly acknowledges (see Doc. 206 at 3), the objections to the draft PSR that his counsel filed and subsequently withdrew related to the Government's restitution calculations and the allegedly "astronomical figures" derived therefrom.  (See Docs. 92, 93, 94).  Tarabein's § 2255 motion asks the Court to vacate, set aside, or correct his sentence specifically "with respect to orders of forfeitures and restitutions" (see Doc. 200-1 at 1, 11), and

Tarabein's reply brief reiterates that he is "disputing only the orders of restitution and forfeitures part in the sentence." (See Doc. 206 at 3). Because Tarabein cannot challenge the restitution component of his sentence in a § 2255 motion, Tarabein's first and third claims must fail.

**B. Failure to Challenge Forfeitures (Ground Two).**

As his second ground for relief, Tarabein claims that his attorneys rendered ineffective assistance by failing to challenge the "unlawful forfeitures" of his property. (Doc. 200 at 5; Doc. 200-1 at 1, 7-8). Because a challenge to the forfeitures portion of a sentence is not cognizable in a § 2255 proceeding, this claim must fail.[14]

"[A] criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all." Young v. United States, 489 F.3d 313, 315 (7th Cir. 2007) (per curiam). "As with restitution claims, a challenge to forfeiture is outside the scope of a § 2255 proceeding because § 2255 affords relief only to those prisoners who claim the right to be released from custody." Ihm v. United States, 2020 U.S. Dist. LEXIS 33083, at *11, 2020 WL 919629, at *4 (M.D. Fla. Feb. 26, 2020); see also Saldana v. United States, 273 F. App'x 842, 844 (11th Cir. 2008)

---

[14] Because Tarabein's claim that his attorneys ineffectively failed to argue forfeitures is not cognizable under § 2255, the Court need not address the Government's other arguments as to why the claim should be denied.

(per curiam) (noting with approval district court's rejection of § 2255 petitioner's contention that 'his attorney [ineffectively] failed to challenge the sufficiency of the evidence supporting the forfeiture orders'" as outside the scope of a § 2255 proceeding); Evans v. United States, 2010 U.S. Dist. LEXIS 8104, at *20, 2010 WL 147158, at *7 (M.D. Fla. Jan. 11, 2010) ("Petitioner's challenge to the forfeiture of his assets is outside the scope of this Section 2255 proceeding, which provides an avenue to challenge custody under a federal criminal conviction or sentence."); Nguyen v. United States, 2012 U.S. Dist. LEXIS 183232, at *11, 2012 WL 6625287, at *4 (N.D. Ga. Aug. 16, 2012) ("Hoang's allegation that the forfeiture proceedings in his case violated his constitutional rights is beyond the scope of a proceeding under § 2255.  Section 2255 proceedings focus on the custodial elements of sentences, not restitution, fines, or property ownership."), report and recommendation adopted, 2012 U.S. Dist. LEXIS 179218, 2012 WL 6625285 (N.D. Ga. Dec. 19, 2012).

Because Tarabein's claim that his attorneys were ineffective for failing to challenge the forfeiture of his properties does not seek relief from a custodial sentence, it is not cognizable under § 2255.  See Ihm, 2020 U.S. Dist. LEXIS 33083, at *11, 2020 WL 919629, at *4 ("[A] claim of ineffective assistance of counsel in connection with the forfeiture of petitioner's home is not cognizable on a § 2255 motion because it 'would in no part relieve

petitioner from his physical confinement . . . .'") (quoting <u>Green v. United States</u>, 2017 U.S. Dist. LEXIS 121178, at *6, 2017 WL 3327588, at *2 (M.D. Fla. Aug. 2, 2017)); <u>Lopez v. United States</u>, 2020 U.S. Dist. LEXIS 141573, at *12, 2020 WL 5868175, at *5 (S.D. Fla. Aug. 6, 2020) (holding that petitioner's claim that his attorney "ineffectively failed to challenge the court's forfeiture order" was "not cognizable in § 2255 proceedings"), <u>report and recommendation adopted</u>, 2020 U.S. Dist. LEXIS 181489, 2020 WL 5848638 (S.D. Fla. Oct. 1, 2020); <u>Olivos v. United States</u>, 2017 U.S. Dist. LEXIS 80906, at *7, 2017 WL 2292973, at *3 (M.D. Fla. May 23, 2017) ("[A] challenge to forfeiture is not cognizable in a § 2255 proceeding."); <u>United States v. Banguera</u>, 62 F.3d 393 (5th Cir. 1995) (per curiam) ("Section 2255 is limited to claims relating to unlawful custody.  Because Banguera is challenging only the forfeiture of assets, which does not go to the validity of his conviction or sentence, his claim is not cognizable under § 2255.") (internal citation omitted).  Accordingly, Tarabein can obtain no relief on this claim.

**C. Failure to File Notice of Appeal (Ground Four).**

In ground four, Tarabein claims that he was denied effective assistance of counsel when his trial attorneys "never filed direct appeal as instructed." (Doc. 200 at 8).  Although Tarabein directs the reader to a "detailed" attachment (see <u>id.</u>), both his motion

20

and the referenced attachment are devoid of any further facts relating to this claim. (See Docs. 200, 200-1).

A defendant who claims ineffective assistance of counsel must prove both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defendant because there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). A court "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted).

An attorney "who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). In this context, "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken.'" Garza v. Idaho, 139 S. Ct. 738, 744 (2019) (quoting Flores-Ortega, 528 U.S. at 484). This "presumption applies even when the defendant has signed an appeal waiver." Id.

"Garza, of course, also recognized that in order for the presumption of prejudice to take hold, a Petitioner . . . must first establish that his attorney's constitutionally deficient

performance deprive[d him] of an appeal that he otherwise would have taken[.]" Lacey v. United States, 2019 U.S. Dist. LEXIS 142484, at *16, 2019 WL 3949059, at *7 (S.D. Ala. July 30, 2019) (citation and internal quotation marks omitted), report and recommendation adopted, 2019 U.S. Dist. LEXIS 141883, 2019 WL 3947917 (S.D. Ala. Aug. 21, 2019); see Garza, 139 S. Ct. at 747 ("*So long as a defendant can show that 'counsel's constitutionally deficient performance deprive[d him] of an appeal that he otherwise would have taken*,' courts are to 'presum[e] prejudice with no further showing from the defendant of the merits of his underlying claims.'") (emphasis added) (quoting Flores-Ortega, 528 U.S. at 484).

As noted previously, the record reflects that Tarabein filed a *pro se* notice of appeal on August 29, 2018. (Doc. 127). Thereafter, Tarabein's trial counsel withdrew from the case (Docs. 134, 135, 136, 137), and the Eleventh Circuit appointed the Federal Defender's Office to represent Tarabein on appeal. (See Doc. 166 at 2; Doc. 205 at 41). Tarabein's appellate counsel filed a brief on his behalf, in which she argued that the appeal should not be dismissed because the notice of appeal was untimely only because of trial counsel's ineffectiveness, and that the district court plainly erred by failing to make specific factual findings regarding restitution calculations before imposing restitution. (Doc. 205 at 24-61). The Eleventh Circuit treated Tarabein's *pro se* notice of appeal as if it were proper and reached the merits of Tarabein's

substantive claim, without deciding the issue of timeliness.  (See Doc. 176).

Accordingly, even assuming *arguendo* that his trial attorneys failed to file a notice of appeal as instructed, Tarabein has demonstrated no prejudice as a result.[15]  Tarabein filed a *pro se* notice of appeal, he obtained the assistance of appointed appellate counsel, and the Eleventh Circuit decided his substantive appellate claim on its merits.  Trial counsel's alleged ineffectiveness did not deprive Tarabein of an appeal he otherwise would have taken or prevent him from raising any available issues on appeal.  See Garza, 139 S. Ct. at 747; Flores-Ortega, 528 U.S. 484; Alexander v. United States, 2020 U.S. Dist. LEXIS 102442, at *6-7, 2020 WL 3100626, at *2 (D. Md. June 11, 2020) (holding that "counsel's failure to timely file a notice of appeal obviously did not deprive [§ 2255 petitioner] of an appeal" when the appellate court "did not dismiss [petitioner's] claim for untimely filing his appeal and considered the appeal's merits, precluding any claim for ineffective assistance of counsel on this basis").  Under these circumstances, there is no

---

[15] Because Tarabein has not shown prejudice, the Court need not inquire further into his allegation that he instructed counsel to file a notice of appeal.  The undersigned notes, however, that Tarabein executed a notice of non-appeal on the date of his sentencing hearing, which stated that he had been advised of his appeal rights, had received an explanation of the advantages and disadvantages of taking an appeal, and did not wish to appeal. (Doc. 119).  In addition, Thomas Spina, one of Tarabein's trial attorneys, attests that "[a]t no time did Mr. Tarabein request that I file a notice of appeal."  (Doc. 205 at 120).

basis to apply the presumption of prejudice recognized in Flores-Ortega and Garza. Moreover, Tarabein articulates no other facts that would suggest that, but for counsel's alleged failure to file a notice of appeal, the result of his proceedings would have been different. Accordingly, Tarabein's fourth claim for relief fails.

**D. Other Assertions of Ineffective Assistance of Counsel.**

In addition to his four enumerated ground for relief, Tarabein's § 2255 motion is interspersed with various other complaints against trial counsel. Taking Tarabein at his word that he is "disputing only the orders of restitution and forfeitures part in the sentence" (see Doc. 206 at 3), the Court can grant Tarabein no relief on these claims "because § 2255 affords relief only to those prisoners who 'claim[ ] the right to be released' from custody." Blaik, 161 F.3d at 1343; see also Mamone, 559 F.3d at 1210-11; Saldana, 273 F. App'x at 844.

Even if any of Tarabein's assorted ineffective assistance claims could be liberally construed to challenge a custodial aspect of his sentence, the claims are due to be denied for lack of factual support. "[T]he § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading,' as authorized under Federal Rule of Civil Procedure 8(a). Coupled with the form petition or motion, the federal rules give the petitioner or movant ample notice of this difference." Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011). Rule 2(b) of the Rules Governing § 2255 Proceedings

requires that a § 2255 motion specify all the grounds for relief available to the moving party and state the facts supporting each ground.  28 U.S.C. § 2255, Rule 2(b).  A petitioner is entitled to an evidentiary hearing on a claim of ineffective assistance of counsel only if he alleges facts "which, if true, would entitle him to relief."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).  No hearing is warranted when the petitioner's claims "are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'"  Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (en banc) (citation omitted); see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  With these principles in mind, the Court will address Tarabein's miscellaneous assertions.

### i.  Claims Relating to Sentencing Hearing.

Tarabein arguably raises four additional claims relating to his counsel's preparation for and performance at his sentencing hearing.  Tarabein suggests that his attorneys were ineffective for (1) asking him not to bring any witnesses to the sentencing hearing; (2) failing to prepare the sole character witness who nevertheless showed up and testified on Tarabein's behalf; (3)

failing to cross-examine the Government's witnesses; and (4) asking the Court to designate a state facility as his place of federal confinement. (Doc. 200-1 at 9-11).

With regard to the first of these claims, "counsel's decision as to which witnesses to call at sentencing, if any, 'is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.'" Sylvin v. United States, 679 F. App'x 975, 976 (11th Cir. 2017) (per curiam) (quoting Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004)). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotation omitted).

The burden to show prejudice "is heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (quotation omitted). If a petitioner complains of counsel's failure to present witnesses, he must show that witnesses not presented actually were actually available and willing to testify. Gilreath v. Head, 234 F.3d 547, 551 n.12 (11th Cir. 2000) (citing Horsley v. State of Alabama, 45 F.3d 1486, 1494-95 (11th Cir. 1995)). "[E]vidence about the testimony of a

putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.   A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (cited by Estiven v. Sec'y, Dep't of Corr., 2017 U.S. App. LEXIS 27097, at *10, 2017 WL 6606915, at *4 (11th Cir. Sept. 28, 2017) (order denying certificate of appealability)).  Thus, to establish ineffective assistance of counsel based on the failure to call a witness, a "petitioner must prove both (1) the substance of the witness's missing testimony and (2) the availability of the witness."  Louis v. United States, 2014 U.S. Dist. LEXIS 145773, at *12, 2014 WL 5093850, at *5 (M.D. Fla. Oct. 10, 2014).

Tarabein hyperbolically implies that his attorneys prevented "6995" of the "7000" patients he treated from testifying in his favor at sentencing, making "the five government's witnesses be the only voice heard by the Court."[16]  (See Doc. 206 at 4-5).  In addition to being fantastical, this assertion is too general and conclusory to support relief.  Tarabein has not identified any specific witnesses who were available to testify on his behalf at sentencing, nor has he proffered the substance of their

---

[16] Oddly, Tarabein makes much of the fact that the Government's witnesses at sentencing were all female.  (See Doc. 206 at 5).

hypothetical testimony. On that basis alone, Tarabein's claim that his attorneys were ineffective for asking him not to bring witnesses to sentencing is due to be summarily denied.

Additionally, Tarabein cannot show that a decision not to present character witnesses at sentencing was patently unreasonable. At sentencing, the Court noted that it had read multiple letters sent in by Tarabein's counsel from patients, employees, friends, and family members, "all in favor of [Tarabein]." (Doc. 171 at 2). Tarabein's attorney read letters of support from three other patients aloud. (See id. at 28-29). Tarabein insinuates that his attorneys should also have presented a line of former patients as witnesses to praise his treatment and refute the Government's allegations. Indeed, Tarabein now suggests that he perjured himself during his guilty plea proceedings and was in fact innocent of almost all the conduct he admitted to before this Court. (See generally Docs. 200, 200-1, 206).[17] However, Tarabein had already confirmed under oath prior

---

[17] For example, Tarabein alleges in his reply brief that after receiving the Government's plea offer, he informed his attorneys that he "den[ied] all government's allegations in the plea" and admitted to "doing only one violation of the C.M.S. standards." (Doc. 206 at 2). Despite his alleged innocence, Tarabein states that he "took the plea only because my defense counsel said that the government *will not accept a partial plea; it is all or none*'. The plea was the best option I had to save myself and my family the mass destruction from facing the most powerful machine ever existed on the planet, the U.S. Government, which crushes 97% of those who don't [plead guilty]." (Id.) (emphasis in original).

to sentencing that the Government could prove the extensive factual allegations against him as set forth in his factual resume. (See Doc. 82; Doc. 170 at 12-17). Moreover, even after receiving a three-point offense level reduction for acceptance of responsibility, Tarabein's guideline imprisonment range was 135 to 168 months. (See Doc. 107 at 12, 18; Doc. 171 at 2). Yet, the Government stood by its agreed recommendation of sixty months' imprisonment, and the Court ultimately accepted that recommendation, thus sentencing Tarabein to a prison term less than half of the low end of the guideline range.[18] (Doc. 171 at 22, 37).

Under these circumstances, it is clear that a decision not to call witnesses at the sentencing hearing was "a strategic decision, which was not patently unreasonable." See Sylvin, 679 F. App'x at 976. Even if Tarabein did have a stable of former patients willing to testify about the high quality of his treatment, it is unclear how such testimony would have been relevant or helpful, as there was no dispute that Tarabein had rendered legitimate services in

---

[18] Noting the sharp discrepancy between Tarabein's guideline range and the Government's much lower recommendation of sixty months, the Court asked counsel for the Government why it was only "recommending half of what the guidelines are." (Doc. 171 at 21). Immediately before pronouncing the sentence, the Court stated that "although I have not heard a good reason from the Government why they decided to enter into a plea agreement for 60 months, I believe that they did that and that you should receive the benefit of the bargain." (Id. at 37).

addition to his fraudulent activities.[19]   Tarabein's counsel submitted and read to the Court a number of character letters from former patients and others, and another patient testified as a character witness for Tarabein.  (See Doc. 171 at 2, 22-29).  To the extent Tarabein asserts that witnesses could have refuted the Government's factual assertions against him, this argument ignores his own *prior sworn admissions* concerning his offense conduct.  It also ignores the risk that belatedly challenging the Government's allegations – as Tarabein does in the instant § 2255 motion - would have suggested a lack of remorse to the sentencing court and resulted in a higher sentence than the one he ultimately received.[20]

Tarabein is also due no relief on his claim that his attorneys were ineffective for failing to prepare his lone character witness. The record reflects that Aaron Haycraft, a longtime former patient, spoke on Tarabein's behalf at sentencing.  (See Doc. 171 at 22-27).  Haycraft praised Tarabein's medical treatment and overall character and described Tarabein's positive impact on his life. (See id.).  Like the five victim witnesses presented by the Government, Haycraft was not examined or cross-examined by counsel

---

[19] At the change-of-plea hearing, Tarabein's counsel emphasized, and the Government's counsel acknowledged, that Tarabein had also provided "legitimate medically necessary services" at his clinic. (See Doc. 170 at 16).

[20] In an email to Tarabein dated May 28, 2018, Spina stated: "I have very little confidence in your ability to present yourself as remorseful and contrite."  (See Doc. 206 at 16).

but instead spoke freely.  (See id. at 3-17, 22-27).  Tarabein complains that Haycraft went "on stand unprepared" (Doc. 200-1 at 10), but he does not articulate what his attorneys could have done to better prepare Haycraft or how better preparation could have led to a more favorable sentencing determination.  Because Tarabein offers only a perfunctory assertion and fails to demonstrate any prejudice as a result of his counsel's alleged failure to prepare Haycraft to testify, he fails to state a claim for ineffective assistance of counsel on this basis.

Tarabein's claim that his attorneys were ineffective because they did not cross-examine the Government's witnesses at sentencing fails for the same reasons.  Tarabein baldly states that "medical records dispute the testimony of each witness" (see Doc. 200-1 at 10), but he provides no evidence to support this assertion.  Even if all five of the Government's witnesses were utterly discredited on cross-examination, Tarabein fails to explain how this would have benefited him.  Indeed, it could not have, since Tarabein had already admitted to engaging in a thirteen-year scheme to defraud health care benefit programs and to unlawfully dispensing a controlled substance for no legitimate medical purpose, and he was sentenced to a prison term far below the guideline range in accordance with his plea agreement.

Tarabein also suggests that one of his attorneys rendered ineffective assistance by asking the Court to designate a state

31

facility as his place of federal confinement.  (See id. at 11).
Assuming *arguendo* that this amounted to deficient performance, it
clearly did not prejudice Tarabein, since counsel withdrew the
request after some discussion with the Court (see Doc. 171 at 41-
42), and Tarabein entered federal custody.  (See, e.g., Doc. 127).

In sum, Tarabein's complaints about his attorneys'
preparation for and performance at sentencing are overly general,
unsupported by specifics, and partially contradicted by the
record, and they fail to show that Tarabein suffered prejudice as
a result of any of his counsel's alleged acts or omissions.
Because Tarabein fails to allege facts that would support a claim
of ineffective assistance of counsel at sentencing, he is entitled
to no relief as to these assertions.

### ii.  Failure to Provide Adequate Explanations of Terms.

In his § 2255 motion, Tarabein states:

> Movant never knew what §2255 or collateral attack mean
> till now, defense counsel never explained to movant
> anything other than that the government are seeking a
> maximum of 60 months imprisonment, which they always
> told movant that will end up ". . little or no time plus
> little or no money".

> Defense counsels never even explained to movant what
> restitution and forfeitures mean till November of 2017,
> about 10 weeks after the plea was signed."

(Doc. 200-1 at 10).

To the extent Tarabein seeks to raise one or more ineffective
assistance of counsel claims based on these vague allegations,

summary dismissal is appropriate. The undersigned notes that Tarabein is a highly educated individual who held a medical degree, practiced medicine in this area for more than twenty years, and founded his own clinic. (See id. at 2). The undersigned further notes that Tarabein does not allege that he ever expressed uncertainty or confusion or asked his attorneys about the meaning of these terms, and the record reflects that he expressed no uncertainty or confusion to the Court when those terms were addressed.

Tarabein's claim - made in a filing dated April 8, 2021 - that he never knew what "§2255 or collateral attack mean till now" is demonstrably false. (See id. at 10, 13). Tarabein was clearly aware of the general meaning of those terms two years earlier, in May 2019, when he sought to collaterally attack his sentence in his original § 2255 motion. (See Doc. 157). During his plea colloquy in August 2017, Tarabein confirmed his understanding of the appeal and collateral attack waiver in his plea agreement and stated under oath that he was satisfied with his attorneys' general advice and representation of him throughout the case. (See Doc. 170 at 5, 9-10). Given his prior sworn representations and filings in this Court, Tarabein's contention that he was previously unaware of the terms "§2255 or collateral attack" is wholly incredible. Moreover, Tarabein alleges no resulting prejudice.

Likewise, Tarabein's suggestion that he was not aware of the meaning of forfeitures and restitution until November 2017 is not credible in the face of the record.  On August 2, 2017, prior to signing the plea agreement, Tarabein asked his attorneys: "When could I know how much $ they'll seek as restitution from my 34 years life-long earnings?" (Doc. 206 at 11).  The plea agreement Tarabein signed five days later informed him that "restitution is mandatory," and Tarabein "agree[d] to make full restitution in an amount to be determined by the Court at sentencing." (Doc. 80 at 6).  The plea agreement also contained a forfeiture provision, which listed thirty real and personal properties subject to forfeiture. (See id. at 6-11).  Tarabein "*agree[d] to forfeit to the United States all of the below listed properties*, each of which is subject to forfeiture pursuant to 18 U.S.C. § 982(a)(7), as each is property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense alleged in Count 1 of the Superseding Indictment." (Id. at 6) (emphasis added).  Tarabein further "*agree[d] to relinquish any right, title, interest, or claim that he may have regarding the below properties* and to waive any right to notice of their forfeiture." (Id.) (emphasis added).  At Tarabein's change-of-plea hearing, the Court inquired as to whether restitution would be owed in this case, and the Government's counsel stated: "We expect so, Your Honor." (Doc.

170 at 9).   The Court then informed Tarabein that he "may be subject to restitution," and Tarabein stated: "I do understand that."   (Id.).   The Court also stated: "Now, the plea agreement also requires that you admit certain property to forfeiture?   Do you understand that?"   (Id. at 6).   Tarabein responded: "Yes, I do, Your Honor."   (Id.).   In the face of this record, Tarabein's unsupported assertion that he was unaware of the meaning of restitution and forfeitures until November 2017 is clearly not credible, and any claim on this basis must fail.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, a certificate of appealability in this case is **DENIED.** See 28 U.S.C. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the

35

prisoner shows, at least, that jurists of reason would find it
debatable whether the petition states a valid claim of the denial
of a constitutional right and that jurists of reason would find it
debatable whether the district court was correct in its procedural
ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a
habeas petition is denied on the merits of the underlying
constitutional claims, a certificate of appealability may issue
only when the petitioner demonstrates "that reasonable jurists
would find the district court's assessment of the constitutional
claims debatable or wrong." Id. ("To obtain a COA under § 2253(c),
a habeas prisoner must make a substantial showing of the denial of
a constitutional right, a demonstration that . . . includes showing
that reasonable jurists could debate whether (or, for that matter,
agree that) the petition should have been resolved in a different
manner or that the issues presented were adequate to deserve
encouragement to proceed further.") (internal citation and
quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S.
322, 336 (2003).

    After reviewing the issues presented in light of the
applicable standards, the Court concludes that reasonable jurists
would not find the Court's disposition of Tarabein's claims wrong
or debatable, and that none of the issues presented are adequate
to deserve encouragement to proceed further. As a result, Tarabein
is not entitled to a certificate of appealability and,

consequently, he should not be permitted to proceed *in forma pauperis* on appeal.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Petitioner Rassan M. Tarabein's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 200) is **DENIED**, and this action is **DISMISSED with prejudice.** Tarabein is not entitled to a certificate of appealability and, consequently, he is not permitted to proceed *in forma pauperis* on appeal.

DONE this 5th day of November 2021.


s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE